Joint Stipulation of Facts – Based on Earlier-Agreed Neutral Statement of Facts

~~Neutral Factual Statement for Jury~~    20-18404(JTQ)

The Court now provides you with a very brief agreed statement of facts to provide you with some context. These are not the only facts in this case—but these are facts the parties agree upon for the purposes of this trial.

Plaintiff Freedom Funding Group is a lender and loan broker that has operated since September 2017. Freedom's business is making loans to customers that cannot secure credit otherwise, consolidating, and servicing customer loans.

Freedom Funding Group uses a "service mark," akin to a "logo," that consists of a white eagle on a blue circle, with the words "Freedom" in black typeface and "funding" in blue typeface. The Court refers to that service mark as the "White Eagle Mark." Freedom has used this White Eagle Mark in interstate commerce and on its website since September 2017.

Between 2017 and October 22, 2020, Defendant Gerald Firestone and Defendant Lawrence Gordon were affiliated with Freedom Funding Group as sales representatives and loan originators. They were compensated as independent contractors. Gordon was employed as the President of Freedom Funding Group and Firestone was the Vice-President of Freedom Funding Group. They had access to Freedom Funding Group's financial information, bank statements, customer lists, and vendor logins.

On October 22, 2020, Mr. Firestone and Mr. Gordon voluntarily terminated their employment with Freedom Funding Group by telephone. On October 23, 2020, Gordon and Firestone established a limited liability company in New Jersey named "The Freedom FundingGroup [one word] LLC." I will refer to this entity as "FFG." Defendant Firestone was listed as the registered agent for FFG and Defendant Gordon was listed as a Member of FFG.

## Court's Legal Findings as to Defendant Gordon

Plaintiff seeks damages for claims on which it has already prevailed. I describe the Court's findings, as a matter of law, with respect to Plaintiff's claims for damages that you will hear evidence regarding in this trial. The Court has found that Defendant Gordon is liable to Freedom Funding Group for the following claims:

## Unfair Competition, Trademark Infringement, Service Mark Infringement

The Court has found Defendant Gordon liable for unfair competition under the Lanham Act, Trademark Infringement under New Jersey law, unfair competition under New Jersey law, common law service mark infringement, and common law unfair competition. In respect of these claims, the Court concluded, as a matter of law, as follows:

1. Since 2017, Freedom used what the Court will refer to as its "White Eagle service mark," which consists of a stylized white eagle imprinted on a blue circle, with the words

1

Joint Stipulation of Facts – Based on Earlier-Agreed Neutral Statement of Facts

"Freedom Funding" adjacent to the image. Freedom used the White Eagle mark in connection with its lending business and Freedom's interest in that mark was protectable.

2. Plaintiff operated a website with the domain name of www.freedomfundinggroup.org in connection with its business. Defendant Gordon registered a website with a nearly identical domain name to Plaintiffs—www.thefreedomfundinggroup.com—in February 2020 and it went live shortly after the Defendants left Plaintiff's employ. I refer to this later website as the "FFG Website." The FFG Website used and displayed Plaintiff's White Eagle Mark and was otherwise nearly identical to Plaintiff's whole website. The Court found that FFG was attempting to provide lending services competitive with Plaintiff's service while wrongfully using the White Eagle Mark.

3. Defendant Gordon's knowledge of Plaintiff's mark, combined with the timing of launching the FFG website, supported the Court's finding of likely consumer confusion that consumers were dealing with Plaintiff, not the Defendants.

4. Gordon's registering a near-duplicate website using Plaintiff's White Eagle mark and imitating Plaintiff's whole website "likely created confusion" with consumers about whether FFG was in any way affiliated with Plaintiff and likely created consumer confusion about whether consumers were dealing with Plaintiff or FFG.

5. As a result, Gordon was liable to Plaintiff for five different claims:

   a. Unfair Competition under the federal Lanham Act;
   b. Trademark Infringement under New Jersey Trademark Statute;
   c. Unfair Competition under the New Jersey Unfair Competition Statute;
   d. Common law unfair competition; and
   e. Common law service mark infringement.

## Violation of the Anti-Cybersquatting Consumer Protection Act

The Court has found Defendant Gordon liable for violating the Anti-Cybersquatting Consumer Protection Act. To establish this claim, the Court found that Freedom proved each of the following elements:

1. Gordon knew that Plaintiff used the White Eagle service mark on its website and loan application and that it was associated with Plaintiff's lending business since 2017.

2. Shortly after he terminated their employment with Plaintiff, Defendant Gordon began using Plaintiff's White Eagle Service Mark on the FFG Website.

3. The Court determined as a matter of law that the FFG address— www.thefreedomfundinggroup.com—was nearly identical to and therefore confusingly similar to Plaintiff's website.

2

Joint Stipulation of Facts – Based on Earlier-Agreed Neutral Statement of Facts

4. The Court found that FFG was <u>intended to be misleadingly similar to</u> Plaintiff's because the FFG website used a nearly identical web address as Plaintiff, used Plaintiff's White Eagle Service Mark, and mimicked the appearance of Plaintiff's website.

5. The Court found that Defendant Gordon created the FFG website in an attempt to divert Plaintiff's clients and business away from Plaintiff and to Defendants.

6. Based on his registration of the nearly-identical FFG web address, use of the White Eagle Service Mark on the FFG website, making the FFG website nearly identical to Plaintiff's website, registration of the FFG website months before leaving his job with Plaintiff and compiled a list of Plaintiff's clients before leaving, Defendant Gordon had a bad faith intent to profit from Plaintiff's mark.

7. As a result, Gordon is liable to Plaintiff for violating the Anti-Cybersquatting Consumer Protection Act.

## Court's Legal Findings as to Both Defendants Gordon and Firestone

As to both Defendants, the Court has found as follows:

## Tortious Interference with Prospective Business Advantage
The Court has found both Defendants Gordon and Firestone liable for tortious interference with prospective business advantage and found as follows:

1. Plaintiff had a protectable interest in its relationships with its clients and its business partners that it relied upon for servicing loans and generating revenue from its loan-related businesses. Plaintiff reasonably expected that it would have ongoing business with its financial partners and its clients.

2. Both Defendants Gordon and Firestone knew of Plaintiff's business and client relationships, as well as that Plaintiff depended on those relationships to generate revenue and continued business.

3. In their prior roles with Plaintiff Freedom Funding Group, Gordon and Firestone had unlimited access to Plaintiff's customer list, confidential information, banking records and accounts, passwords, password reset information, vendor account information, and marketing strategies.

4. Defendants Gordon and Firestone wrongfully interfered with Plaintiff's protected interest in Plaintiff's client and business relationships using Plaintiff's customer lists and other confidential information. The Court found that Defendants intentionally interfered with Plaintiff's business with the intent to cause harm to Plaintiff. Specifically, the Court found that the Defendants used Plaintiff's proprietary information, imitated Plaintiff's website, and targeted at least five of Plaintiff's clients through emails sent from the FFG domain name that imitated Plaintiff's to try to trick them into applying for a new loan through FFG using their nearly-identical domain name. The Court also found that Defendants

3

Joint Stipulation of Facts – Based on Earlier-Agreed Neutral Statement of Facts

wrongfully interfered with Plaintiff's business and banking relationships, including specifically Plaintiff's relationship with Quicken Loans. They also caused Plaintiff to lose access to the Automated Clearing House, or ACH, system, which is necessary to receive revenue and to originate loans.

5. The Defendants' conduct did not meet the accepted ethical and moral standards for the lending industry.

6. The Court found that Defendants' interference with Plaintiff's relationships caused Plaintiff to lose its clients and business. The Court specifically found that Defendants' wrongful interference caused Quicken to cut off its relationship with Plaintiff, which locked Plaintiff out of the ACH Network. The Court found, as a matter of law, that as a result of Defendants' tortious interference, Plaintiff's revenue dropped to 0 and Plaintiff was financially damaged. The Court specifically found that Plaintiff's lost revenue included tens of thousands of dollars in annual revenue it would have received from servicing a portfolio of Quicken Loans. The Court also held that because Plaintiff couldn't repair its business relationship with Quicken after Defendants interfered with it, the harm to Plaintiff was ongoing.

7. The Court found Defendants Gordon and Firestone to Plaintiff for tortious interference.

## Misappropriation of Trade Secrets in Violation of the New Jersey Trade Secrets Act

The Court has found both Defendants Gordon and Firestone liable for misappropriation of trade secrets under the New Jersey Trade Secrets Act, finding as follows:

1. A trade secret is information that "derives potential or actual independent economic value because others who could use it for their own profits do not have access to it and could not access it lawfully." It must be information that's not general knowledge in an industry.

2. The Court found that Plaintiff's client lists were trade secrets. It also found that lists Plaintiff bought from a lead generating company that Plaintiff updated and used to identify qualified potential clients were trade secrets because it was information collected and modified only by Plaintiff and was unique to Plaintiff's business.

3. Gordon "created a list of Plaintiff's clients that he intended to solicit once he left Plaintiff's employ," on a spreadsheet entitled Freedom Funding Group LLC," and dated May 2019 which was relevant because Gordon did not leave until October 2020. The spreadsheet contained Plaintiff's client information, including their identity, location, contact information, and the size of the loans the clients sought. The Court also found that Defendant Firestone used Plaintiff's confidential information to try to compete with and solicit Plaintiff's clients through emails sent from the FFG domain name that targeted Plaintiff's clients.

4

Joint Stipulation of Facts – Based on Earlier-Agreed Neutral Statement of Facts

DATED: 5/19/2026

_____
Benjamin Zakarin, Esq.
*Attorney For Plaintiff*

DATED: 5/19/2026

_____
Lawrence Gordon
*Defendant*

DATED: 5/19/2026

_____
Gerald A. Firestone
*Defendant*

DATED: 5/19/2026

_____
Nerses Khachatryan
*Counterclaim Defendant*

**RECEIVED**

MAY 1 9 2026

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

5